BRANCART & BRANCART
Liza Cristol-Deman (SBN 190516)
*lcristoldeman@brancart.com*
P.O. Box 686
Pescadero, CA 94060
Tel: (650) 879-0141
Fax: (650) 879-1103

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
Jason Tarricone (CBN 247506)
*jason@clsepa.org*
Margaret McBride (CBN 294066)
*mmcbride@clsepa.org*
1861 Bay Road
East Palo Alto, CA 94303
Tel: (650) 326-6440, ext. 302
Fax: (866) 688-5204

ORRICK, HERRINGTON & SUTCLIFFE
Christina Von der Ahe Rayburn (CBN 255467)
*cvonderahe@orrick.com*
Sonia E. Valdez (CBN 274168)
Jason Yu, Cal (CBN 274215)
*jasonyu@orrick.com*
David Ryan Medina (CBN 310671)
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Attorneys for All Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BUCKINGHAM APARTMENTS TENANTS' ASSOCIATION, an unincorporated association; NORMA CORVERA; DORA DIAZ; SANDRA FIGUEROA; LAURA HERNANDEZ; JUAN JIMENEZ; ISABEL MARTINEZ; and EDUARDO MURILLO,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**180 BUCKINGHAM PROPERTY, LLC and TRION PROPERTIES, INC., a California Corporation,**<br><br>**Defendants.** | **Case No.**<br><br>**COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY** |

## I. INTRODUCTION

1. This is a housing action brought against the owners and management company operating the Buckingham Apartments, a 48-unit apartment building in the unincorporated area of Redwood City known as North Fair Oaks, or "Little Michoacán." According to the 2010 U.S. Census, the population of North Fair Oaks is 73.1% Latino. Trion Properties, Inc., a private equity firm that specializes in flipping multi-family properties in gentrifying neighborhoods, purchased the Buckingham Apartments in July 2016, through a limited liability company that Trion controls called "180 Buckingham Property LLC." The press release issued by Trion Properties states that, after renovation, the Buckingham Apartments would "cater[] to young working professionals." Trion Properties now has served eviction notices on nearly all month-to-month tenants of the Buckingham Apartments and has stated that it intends to serve eviction notices on all other tenants in the near future. This mass eviction has the purpose or effect of displacing non-white residents and families with children in favor of primarily Caucasian residents who work at high-tech companies on the mid-Peninsula, such as Facebook and Oracle. Trion's statements concerning its intended residents of the Buckingham Apartments and its mass displacement plan violate the Fair Housing Act (42 U.S.C. § 3601 et seq.), the Civil Rights Act of 1871 (42 U.S.C. §§ 1981, 1985), the California Fair Employment and Housing Act (Cal. Gov't Code §§ 12927, 12955 et seq.), and other state and federal laws.

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 because plaintiffs' claims under the Civil Rights Act of 1871 and the Fair Housing Act arise under the laws of the United States. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiffs' additional claims under state law because plaintiffs' state law claims relate to plaintiffs' federal law claims, arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper because plaintiffs' claims arise from unlawful conduct occurring in San Mateo County, California and the rental property that is the subject of this action is

located in San Mateo, California.

## III. INTRADISTRICT ASSIGNMENT

4. Pursuant to Local Rule 3-2(c), assignment to the San Francisco or Oakland Division is proper because the claims alleged herein arose in San Mateo County, California.

## IV. PARTIES

5. Plaintiff Buckingham Apartments Tenants' Association ("Buckingham Association") is an unincorporated association comprised of residents of the Buckingham Apartments who will be displaced by Trion Properties' purchase and discriminatory actions. The Buckingham Association has seven members. Each member is an "aggrieved person" within the meaning of Government Code section 12927, subdivision (g) and the Fair Housing Act, 42 U.S.C. section 3602(i).

6. Plaintiff Norma Corvera lives with her family in apartment 222 at the Buckingham Apartments. She lives with her husband and minor son. They are Latinos of Honduran and El Salvadoran national origin. Ms. Corvera is a member of the Buckingham Association.

7. Plaintiff Dora Diaz lives with her family in apartment 346 at the Buckingham Apartments. They are Latinos of Mexican national origin. Ms. Diaz is a member of the Buckingham Association.

8. Plaintiff Sandra Figueroa lives with her family in apartment 232 at the Buckingham Apartments. They are Latinos of Mexican, El Salvadoran, and Nicaraguan national origin. Ms. Figueroa is a member of the Buckingham Association.

9. Plaintiff Laura Hernandez lives with her family in apartment 110 at the Buckingham Apartments. They are Latinos of Mexican national origin. Ms. Hernandez is a member of the Buckingham Association.

10. Plaintiff Juan Jimenez lives with his sister in apartment 220 at the Buckingham Apartments. They are Latinos of Mexican national origin. Mr. Jimenez is a member of the Buckingham Association.

11. Plaintiff Isabel Martinez lives with her family in apartment 337 at the

Buckingham Apartments. They are Latinos of Mexican national origin. Ms. Martinez is a member of the Buckingham Association.

12. Plaintiff Eduardo Murillo lives with his family in apartment 224 at the Buckingham Apartments. They are Latinos of Mexican national origin. Mr. Murillo is a member of the Buckingham Association.

13. According to public records filed with the San Mateo County Recorder, defendant 180 Buckingham Properties LLC is the current owner of the Buckingham Apartments. Those records show that 180 Buckingham Properties LLC purchased the Buckingham Apartments in or around July 2016. Plaintiffs are informed and believe, and thereon allege, that 180 Buckingham Properties LLC is closely affiliated with defendant Trion Properties, Inc.

14. The Buckingham Apartments is a "dwelling" within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(b); a "housing accommodation" within the meaning of the California Fair Employment and Housing Act, California Government Code § 12927(d); and a "business establishment" within the meaning of the California Unruh Civil Rights Act, Civil Code § 51(b).

15. Defendant Trion Properties, Inc. ("Trion") is a California corporation with its principal place of business located in Los Angeles. Since July 2016, Trion has held itself out to tenants as the management company operating the Buckingham Apartments. Trion's website (www.trion-properties.com) describes the corporation as a "private equity investment company which acquires opportunistic real estate investments that need moderate to heavy rehab on a mid to long term investment horizon." The website also claims that Trion has "a hands-on management style of heavy renovation and aggressive lease-up."

16. During the commission of the unlawful practices alleged in this action, each defendant was an "owner" of the Buckingham Apartments, a definition covering owners, operators, managers and their agents, pursuant to Government Code sections 12927 and 12955.

17. Each and every defendant is and was, in doing the things complained of herein, the agent of its co-defendants herein and was acting within the scope of said agency and/or representation, and each and every defendant herein is jointly and severally responsible and liable

to plaintiffs for the damages hereinafter alleged.

## V. LEGAL FRAMEWORK

### A. The Fair Housing Act and Cal. Fair Employment and Housing Act

18. The Fair Housing Act, 42 U.S.C. § 3604 *et seq.* prohibits a wide variety of housing practices that have the purpose or effect of discriminating based on race or national origin, among other characteristics.

19. The Fair Housing Act, 42 U.S.C. § 3604(a), prohibits "mak[ing" unavailable or deny[ing], a dwelling to any person because of race, . . . or national origin."

20. The Fair Housing Act, 42 U.S.C. § 3604(e), prohibits "[f]or profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race . . . or national origin."

21. The California Fair Employment and Housing Act, Government Code §§ 12927, 12955 et seq. prohibits a wide variety of housing practices that have the purpose or effect of discriminating based on race, ethnicity, national origin, and source of income, among other characteristics.

22. The California Fair Employment and Housing Act, Government Code §§ 12955 (c) prohibits any discriminatory statement "with respect to the sale or rental of a housing accommodation that indicates any preference, limitation, or discrimination based on race, . . . , national origin, ancestry, ..., source of income, ... or an intention to make that preference, limitation, or discrimination.

23. Plaintiffs allege that defendants have engaged in discriminatory housing practices that violate each of these sections, among others.

### B. United States Department of Housing and Urban Development Regulations

24. The United States Department of Housing and Urban Development ("HUD") is charged with implementing rules and regulations governing the enforcement of the Fair Housing Act. Those rules and regulations are published in Title 24 of the Code of Federal Regulations.

25. 24 C.F.R. § 100.60(b)(5) provides that it is unlawful to evict tenants because of

their race . . . or national origin. Plaintiffs contend that defendants have issued move-out notices and intend to evict tenants based on their race or national origin.

26. 24 C.F.R. § 100.85(c)(1) prohibits blockbusting, which includes "for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, familial status, or national origin or with a handicap." Plaintiffs allege that defendants' conduct constitutes a modern form of blockbusting.

27. 24 C.F.R. § 100.500(a) provides that conduct has a discriminatory effect if it actually or predictably results in a discrimination against a protected group of persons. Plaintiffs allege that defendants' conduct actually and predictably results in discrimination against Latinos based on their race and national origin.

## VI. FACTS

### A. Introduction

28. The Buckingham Apartments is located in a working-class neighborhood of Redwood City that is predominantly Latino. The majority of the residents of Buckingham Apartments are Latino. The majority of the residents of Buckingham Apartments do not work in the high tech industry. Many are low-paid service workers such as hotel maids, cooks, and retail clerks. Many have school-aged children or elderly relatives living with them, or in some apartments, multiple generations living together. Many residents of the Buckingham Apartments spend in excess of 50% of their monthly income to pay their rent.

29. In press releases, news articles, and on its website, Trion's managing agents have made statements with respect to the purchase of the Buckingham Apartments that reflect a preference for residents who are "young professionals" working in the high tech industry.

30. The majority of employees in the high-tech industry are not Latino. As an example, as of June 2015, Facebook published data showing that its employees are 55% Caucasian, 36% Asian, 4% Latino, and 2% Black.

### B. Trion's business model includes targeting properties in gentrifying areas and "re-tenanting" the properties with predominantly white residents.

31. Trion's business model includes targeting apartment buildings in gentrifying areas, evicting current tenants from protected classes, and renovating the apartments to appeal to "young professionals."

32. Trion's website has a tab called "portfolio." Under that tab, Trion provides photos and descriptions of numerous multi-family properties that it has purchased and flipped, or that Trion is in the process of flipping. Each of the properties is located in an area that was beginning to show signs of demographic changes, from predominantly non-white residents to more white residents at the time that Trion purchased the property.

33. For example, Trion purchased the Avalon Catalina in the Koreatown section of Los Angeles. The description on Trion's website reads, "Opportunity to acquire an off-market 1920's vintage asset in prime Koreatown. The property has a rare exemption from rent control for a pre-1979 vintage asset. The 1920s brick building consists of studios and 1 bedroom apartment units. Following the success in repositioning the Eleanor Apartments at 412 S. Lake St, Trion will implement a similar rebranding strategy in hopes **to attract the millennial tenant base** currently populating the feeder markets of Downtown LA." [Emphasis added.]

34. Another example of a property purchase described on Trion's website is the Tigardville Apartments located in Tigard, a suburb of Portland, Oregon. Trion's website describes the transaction as an "[o]ff-market opportunity to acquire a distressed 36-unit garden style asset **located in the gentrifying area** of Tigard, OR." [Emphasis added.]

35. Trion's website also cites its "East Bay Portfolio," referring to the area east of San Francisco Bay. Trion's website describes its two East Bay purchases as an "[o]pportunity to acquire two value-add assets located in Hayward and San Leandro, east of the San Francisco Bay. As rents continue to rise in the primary markets such as San Francisco and Silicon Valley, **young workers** have chosen to move east to these feeder markets, where rents are more affordable and the commute to the city via the BART is short." [Emphasis added.]

36. Trion's purchase of the Buckingham Apartments is also described on Trion's website. The website states that Trion took advantage of an "off-market opportunity to acquire a 48-unit apartment community located on the San Francisco peninsula in Redwood City, CA. The

seller was extremely motivated to sell this property at a discount, as he had already found an up-leg on an exchange. There has been some basic renovation at the property and the most recent rents are substantially more than the average in-place. Along with its clear and substantial upside, the property is well located in Redwood City, **a new epicenter for employment as powerhouse tech employees** such as Oracle, Box.com, Facebook, and Google have situated offices in the area." [Emphasis added.]

### C. Trion's motives and plans for Buckingham Apartments are consistent with its business model.

37. Trion created and disseminated a PowerPoint presentation regarding its plans for the Buckingham Apartments, which is available online. Plaintiffs are informed and believe, and thereon allege, that the presentation was created and disseminated for the purpose of luring investors.

38. In that PowerPoint presentation, Trion stated that "Trion specializes in the identification, acquisition and redevelopment of undervalued multifamily properties. By imploring [sic]a proven, successful repositioning strategy, in acquiring, managing, renovating and **re-tenanting** multifamily properties, the principals of Trion were able to timely exit projects prior to getting caught in the market meltdown of 2008." [Emphasis added.]

39. In that PowerPoint presentation, Trion described the Buckingham Apartments as "48 non-rent controlled units in gentrifying market of Redwood City."

40. In the same PowerPoint presentation, Trion stated, "[u]pon obtaining title to the Project, it is anticipated that the Company will begin adding high-end interior finishes and strategic common area improvements to attract the high income demographic living in the area."

41. The majority of residents of North Fair Oaks and the Buckingham Apartments are Latinos who are not young professionals and who do not work in the high-tech industry. Plaintiffs are informed and believe, and allege thereon, that defendants' plans to attract residents of a "high income demographic" exclude Latinos residing in the Buckingham Apartments, Latinos in North Fair Oaks, or Latinos in the San Francisco Peninsula, and that defendants were aware that their plans would exclude such residents when they made them.

42. Trion's PowerPoint presentation refers to Redwood City as "A New Hub For Tech Employment." The presentation lists potential residents as employees of Google, Box.com, Oracle, Facebook, and other high-end office space.

**D. Trion purchases the Buckingham Apartments and almost immediately begins to evict current tenants.**

43. According to records filed with the San Mateo County Recorder, 180 Buckingham LLC purchased the Buckingham Apartments on or about July 14, 2016.

44. On or around July 14, 2016, defendants issued a notice on Trion letterhead addressed to "All Tenants," announcing that Trion Properties was the new "property management" for 180 Buckingham Apartments. The notice stated that Trion accepted rent via an online portal or by "electronic cash payments" only. The notice did not mention that Trion has plans to force all tenants to move out.

45. Based on a wave of eviction notices and news articles, also in July 2016, tenants soon learned that their tenancies would be terminated by Trion in order to fulfil Trion's desire to attract tenants who are young professionals working in the high tech industry.

46. Trion issued a press release in July 2016, announcing its purchase of the Buckingham Apartments. The press release stated that Trion planned to "rebrand the property" with interior and exterior renovations, and to "create a tenant lounge to build a sense of community for residents, particularly **catering to young working professionals**." [Emphasis added.]

47. *The Silicon Valley Business Journal* published an article on July 27, 2016, about Trion's purchase of the Buckingham Apartments. That article repeated the same plans that were set forth in Trion's press release, including "catering to young working professionals." Many tenants of the Buckingham Apartments, including the plaintiffs, saw or were informed about the contents of the article.

***Norma Corvera***

48. Plaintiff Norma Corvera and her family have resided in apartment 222 at the Buckingham Apartments continuously from March 1, 2016 to the present. Apartment 222 is a

two-bedroom apartment. Their monthly rent is $2,490 per month. Their lease agreement expires on or about February 28, 2017.

49. Neither Ms. Corvera nor other occupants of her apartment is a professional in the tech industry.

50. Based on statements by defendants, plaintiffs are informed and believe, and thereon allege, that defendants intend to terminate Ms. Corvera's tenancy when it expires in order to renovate and "re-tenant" her apartment.

***Dora Diaz***

51. Plaintiff Dora Diaz and her family have resided in apartment 346 at the Buckingham Apartments continuously from January 2013 to the present. During that period of time, their monthly rent has increased from $1,580 to $2,100 per month. Apartment 346 is a two-bedroom apartment. Ms. Diaz was on a lease at the time when the termination notices were served on more than a dozen families in the Buckingham Apartments in July 2016. However, Ms. Diaz' lease has now expired and she has become a month-to-month tenant.

52. Neither Ms. Diaz nor other occupants of her apartment is a professional in the tech industry.

53. Based on statements by defendants, plaintiffs are informed and believe, and thereon allege, that defendants intend to terminate Ms. Diaz's tenancy in the near future in order to renovate and "re-tenant" her apartment with young professionals who work at high-tech companies.

***Sandra Figueroa***

54. Plaintiff Sandra Figueroa and her family have resided in apartment 232 at the Buckingham Apartments since approximately November 2015. Their monthly rent is $1,895 per month for their one-bedroom apartment. Ms. Figueroa has a lease agreement that will expire soon.

55. Neither Ms. Figueroa nor other occupants of her apartment is a professional in the tech industry.

56. Based on statements by defendants, plaintiffs are informed and believe, and

thereon allege, that defendants intend to terminate Ms. Figueroa's tenancy when it expires in order to renovate and "re-tenant" her apartment with young professionals who work at high tech companies.

***Laura Hernandez***

57. Plaintiff Laura Hernandez and her family have resided in apartment 110 at the Buckingham Apartments continuously from March 2013 to the present. During that period of time, their monthly rent has increased from $1,550 to $1,700 per month. Apartment 110 is a one-bedroom apartment. Defendants served Ms. Hernandez with a 60-day notice to move out on July 20, 2016.

58. Neither Ms. Diaz nor other occupants of her apartment is a professional in the tech industry.

59. Based on statements by defendants, plaintiffs are informed and believe, and thereon allege, that defendants have issued the move-out notice to Ms. Hernandez solely for the purpose of renovating and "re-tenanting" her apartment with young professionals who work at high tech companies.

***Juan Jimenez***

60. Plaintiff Juan Jimenez and his sister have resided in apartment 220 at the Buckingham Apartments continuously from July 2014 to the present. During that period of time, their monthly rent has increased from $1,500 to $1,700 per month. Apartment 220 is a one-bedroom apartment. Defendants served Mr. Jimenez with a 60-day notice to move out on July 20, 2016.

61. Neither Mr. Jimenez nor his sister is a professional in the tech industry.

62. Based on statements by defendants, plaintiffs are informed and believe, and thereon allege, that defendants have issued the move-out notice to Mr. Jimenez solely for the purpose of renovating and "re-tenanting" his apartment with young professionals who work at high tech companies.

***Isabel Martinez***

63. Plaintiff Isabel Martinez and her family have resided in apartment 337 at the

Buckingham Apartments continuously from approximately 2012 to the present. During that period of time, their monthly rent has increased from $950 to $1,800 per month. Apartment 337 is a one-bedroom apartment.

64. Neither Ms. Martinez nor other occupants of her unit is a professional in the tech industry.

65. Based on statements by defendants, plaintiffs are informed and believe, and thereon allege, that defendants intend to terminate Ms. Martinez's tenancy in the near future in order to renovate and "re-tenant" her apartment with young professionals who work at high tech companies.

***Eduardo Murillo***

66. Plaintiff Eduardo Murillo and his family have resided in apartment 224 at the Buckingham Apartments continuously from approximately September 2013 to the present. During that period of time, their monthly rent has increased from $1,450 to $1,650 per month. Apartment 224 is a one-bedroom apartment.

67. Defendants served Mr. Murillo with a 60-day notice to move out on July 20, 2016. The notice was signed by an agent of 180 Buckingham LLC.

68. Neither Mr. Murrillo nor other occupants of his unit is a professional in the tech industry.

69. Based on statements by defendants, plaintiffs are informed and believe, and thereon allege, that defendants have issued the move-out notice to Mr. Murrillo solely for the purpose of renovating and "re-tenanting" his apartment with young professionals who work at high tech companies.

**E. Injuries**

70. The plaintiffs, and each of them, have been injured by defendants' unlawful conduct. These injuries include property damages, economic loss, and personal injury, including annoyance, discomfort, aggravation, humiliation, degradation, embarrassment, and emotional distress with attendant bodily injuries. The individual plaintiffs are entitled to compensatory damages.

71. The Buckingham Association seeks injunctive relief only.

72. In doing the acts of which plaintiffs complain, defendants and their agents and employees intentionally or recklessly violated plaintiffs' federally protected rights. Accordingly, plaintiffs are entitled to punitive damages under federal law.

73. There now exists an actual controversy between the parties regarding defendants' duties under federal and state civil rights laws. Accordingly, plaintiffs are entitled to declaratory relief under federal and state law.

74. Unless enjoined, defendants and their agents and employees will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Eviction of many residents is imminent. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from defendant's acts and the pattern or practice of discrimination unless relief is provided by this Court. Accordingly, plaintiffs are entitled to injunctive relief under federal and state law.

## VII. CLAIMS

### A. FIRST CLAIM

**[Fair Housing Act, 42 U.S. C. § 3601 et seq.]**

75. Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

76. Defendants injured plaintiffs by committing discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq.

### B. SECOND CLAIM

**[Civil Rights Act of 1866, 42 U.S.C. § 1981]**

77. Plaintiffs reallege and incorporate herein by reference all previous paragraphs in this complaint.

78. Defendants have injured plaintiffs by depriving them of full and equal rights and benefits under the law based on their race, color, or ethnicity, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

//

**C. THIRD CLAIM**

**[Fair Employment and Housing Act, Gov't Code §§ 12927, 12955 et seq.]**

79. Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

80. Defendants injured plaintiffs by committing discriminatory housing practices in violation of the California Fair Employment and Housing Act, Government Code §§ 12927 and 12955 et seq.

**D. FOURTH CLAIM**

**[California Unruh Civil Rights Act, Civil Code §§ 51, 52]**

81. Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

82. Defendants injured plaintiffs in violation of the Unruh Civil Rights Act by engaging in discriminatory housing practices in connection with the ownership and operation of Trion, 180 Buckingham LLC, and the Buckingham Apartments, all of which are business establishments within the meaning of Civil Code § 51.

83. Accordingly, for each offense, the individual plaintiffs are entitled to actual damages; to an amount up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000); and to attorneys' fees that may be determined by the Court.

**E. FIFTH CLAIM**

**[Negligence]**

84. Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

85. Defendants owed plaintiffs a legal duty to operate in a manner free of discrimination on the basis of race, national origin, age, and source of income. Defendants negligently violated that duty.

86. Such negligence was a substantial factor in causing plaintiffs' injuries. As a direct and proximate result of defendants' unlawful acts and failures to act, plaintiffs have

suffered damages.

### F. SIXTH CLAIM

### [Breach of the Covenant of Quiet Use and Enjoyment]

87. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

88. Defendants injured the individual plaintiffs by infringing upon their right to the quiet use, enjoyment and possession of their dwellings, including their private right of occupancy, in violation of Civil Code §§ 1927 and 1940.2.

### G. SEVENTH CLAIM

### [Unfair Business Practices]

89. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

90. In acting as herein alleged, defendants have engaged in a pattern or practice of unlawful discrimination in the operation of Trion, 180 Buckingham LLC, and the Buckingham Apartments, which are business establishments, and therefore have engaged in acts of unfair competition as the same is defined in § 17200 of the Business and Professions Code.

91. In bringing this action for relief, plaintiffs are acting in the interest of themselves and the general public pursuant to section 17204 of the California Business and Professions Code.

## VIII. RELIEF

Wherefore, plaintiffs pray for entry of judgment against defendants that:

1. Awards compensatory and punitive damages to all plaintiffs except the Buckingham Association according to proof;

2. Awards statutory damages to all plaintiffs except the Buckingham Association pursuant to the Unruh Civil Rights Act;

3. Declares that defendants have violated the provisions of the applicable federal and state laws;

4. Enjoins the filing and enforcement of any eviction actions and any further

move-out notices pending the outcome of this litigation;

5. Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all regardless of national origin, race, age, and source of income;

6. Awards costs in this action, including reasonable attorneys' fees, to all plaintiffs, pursuant to the Fair Housing Act, FEHA, and all other applicable provisions of law; and,

7. Awards all such other relief as the Court deems just.

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury.

Dated: October 31, 2016.

Respectfully submitted,

ATTORNEYS FOR ALL PLAINTIFFS:

BRANCART & BRANCART

/s/ Liza Cristol-Deman

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO

/s/ Jason Tarricone

ORRICK, HARRINGTON, & SUTCLIFFE

/s/ Christina Von der Ahe Rayburn